## Abram v. Mallicoat.

(Decided April 19, 1912.)

## Appeal from Jackson Circuit Court.

1. Lands—Disputed Line—Title.—In this action involving the title to a small parcel of land claimed by each of the parties to be included within the boundary of his deed, as appellee's is the elder title and appellant's deed calls for and to run with appellee's land, the only legal way of determining the controversy was to properly locate appellee's line called for by appellant's deed. This the circuit court did by adjudging that the line in contro-

versy ran from a buckeye tree, marked as a corner, standing near a spring on Baugh branch, to a double chestnut oak, also marked as a corner, on the top of an adjacent ridge, which included within the boundary of appellee's deed the land in dispute.

2.    Same—Judgment—Evidence.—As it is not apparent from the record that the judgment of the court thus locating the line is contrary to the weight of the evidence, the judgment will not be disturbed.

J. R. LLEWELLYN and H. N. DEAN for appellant.

A. W. BAKER for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

By this appeal a review is sought of a judgment of the circuit court locating the dividing line between the lands of appellant and appellee; the latter having sued to quiet his title to a small parcel of land alleged to be within the boundary of his deed and owned by him, but wrongfully claimed by appellant, whose answer and counter claim alleged his ownership thereof on the ground that it is covered by his deed, and prayed that his title thereto be quieted. Neither party claims beyond the boundary contained in his deed, and the controversy between them can properly be determined only by correctly locating the line dividing their lands. It is apparent, therefore, that the question to be decided is one of fact.

The line as established by the judgment of the circuit court gave appellee the land in dispute, consequently his title thereto was by the judgment quieted.

The lands of both appellant and appellee were formerly owned by John Abrams, appellant's father, but appellee's is the elder title; his land having been conveyed Susan and Elizabeth Hubbard by John Abram, October 16, 1865, by deed of that date, and by successive deeds from the Hubbards, and Field and Callahan intermediate grantors, to appellee. Appellant's title to his land was acquired August 5, 1902, through a deed of that date from John Abram and wife.

The several deeds through which appellee derived title to his land describe all objects designated therein as corners and the lines of adjacent tracts with which its boundary runs, but give neither courses nor distances. Appellant's deed describes the objects designated therein as corners of his land and also the courses of its sev-

eral lines, but fails to give the distances between the objects called for; and the map of the two tracts found in the record is but a rough pencil sketch, too indefinite in form or detail to be helpful. It is conceded by appellant, however, that as his deed calls for the Hubbard (appellee's) line and to run an "east course with Hubbard's line to the top of the ridge, to a double chestnut oak at Abner Witt's corner," the location of the Hubbard line must necessarily determine the ownership of the land in controversy.

The boundary of appellee's land is given in the several deeds under which he claims title as follows: "Beginning at a buckeye on the creek (Horse Lick Creek), thence up the creek with its meanders to the mouth of the Baugh Branch, thence up the branch to an ash and buckeye, thence a straight line to a chestnut oak on top of the ridge, thence with the Snoddy line to the beginning."

It will at once be observed that the location of the ash and buckeye corner on Baugh branch and the chestnut oak corner on the top of the ridge, are the important things to be determined in establishing the line of the Hubbard (appellee's) land. It is appellee's contention, and his evidence conduced to prove that the ash and buckeye were near the "Cold Spring," and that the ash tree which once stood near the buckeye has been destroyed, but several witnesses testified that it was there at the date of the deed from John Abram to the Hubbards and some years later, and was marked with the buckeye tree as a corner of the land conveyed the Hubbards. The evidence in appellee's behalf also showed that some of the roots of the ash tree are yet in the ground near the buckeye, and this evidence seems to be uncontradicted. The buckeye tree is still standing marked as a corner tree; the marks corresponding in appearance and age with the date of the Hubbard deed.

Several witnesses testified that John Abram, immediately after appellee's purchase of the Hubbard land in their presence pointed out to appellee the buckeye tree at Cold Spring as a corner of the Hubbard land, and said that the buckeye and ash formerly standing near it, had been marked as a corner of the Hubbard land at the time of the conveyance to the Hubbards. These statements of John Abram were made in response to an inquiry from appellee as to the location of the ash and buckeye corner,

he being at the time unfamiliar with the boundary of the land and going around the lines for the purpose of ascertaining the corners. It is true that in a deposition given in his son's (appellant's) behalf in this case, John Abram denied that he had told appellee the buckeye near the Cold Spring was a corner of the Hubbard land, and testified that the buckeye corner was another buckeye tree standing two hundred yards below the one at the Cold Spring. As the witness was over 80 years of age when his deposition was taken, it is but fair to presume that his contradiction therein of the previous statements made by him to appellee as to the location of the ash and buckeye corner at the Cold Spring, was due to his age and feebleness of recollection, for it is unbelievable that the several witnesses who testified as to the statements to appellee could have been mistaken, and we are unwilling to conclude that they testified falsely as they had no interest in the case to subserve and their veracity was unattacked.

Not only does it appear from the evidence that the buckeye standing near the spring is marked as a corner tree on the side approached by appellee's line calling to run to it, but it is so marked on the side looking in the direction of the chestnut oak on the ridge, called for in the deed as another corner of appellee's land. We also find that much of appellee's evidence positively indentified the chestnut oak as a corner. The tree is in fact a double chestnut oak and the marks upon it designating it as a corner tree correspond in age with those on the buckeye at the spring and the date of the deed from John Abram to the Hubbards.

If the proof sufficiently establishes the buckeye at the spring as a corner to appellee's land, it would seem to follow that the double chestnut oak on the ridge is also a corner, as there appears to be no other tree of like kind that would be reached by the running of a straight line from the buckeye at the spring; therefore, acceptance of the buckeye and double chestnut oak as established corners of the Hubbard land would inevitably lead to the further conclusion that the land in controversy is owned by appellee. On the other hand, it is appellant's contention, to sustain which his evidence was all directed, that the ash and buckeye corner of the Hubbard land is two hundred yards below the cold spring, and that the true line from that corner to the top of the ridge would end, not at the double chestnut oak claimed

as a corner by appellee, but another chestnut oak at the corner of appellee's cornfield, containing, it is claimed, marks as a corner tree. This contention rests mainly upon the deposition of John Abram, whose testimony, as we have seen, is contradicted by several witnesses who heard him inform appellees several years ago that the ash and buckeye at the cold spring was the true corner of appellee's land.

Certain of appellant's witnesses testified that the buckeye 200 yards from the Cold Spring and chestnut oak near appellee's cornfield are marked, but it does not definitely appear from their statements that they are marked as corners, or that the marks correspond in age with the date of the Hubbard deed.

It will be seen from what we have said of the evidence that it is conflicting, but the parties and witnesses are presumed to have been known to the judge of the circuit court, and while his conclusion expressed in the judgment, that the buckeye near the Cold Spring and double chestnut oak on the ridge are the true corners of appellee's line called for by appellant's deed, is not free from doubt, as we are not satisfied that the judgment is against the weight of the evidence, it is our duty to uphold it.

Wherefore, the judgment is affirmed.