## Scully v. McDonald.

(Decided April 21, 1914.)

### Appeal from Kenton Circuit Court
### (Criminal, Common Law and Equity Division).

Evidence—Hearsay.—Where there was an issue of fact as to whether a landlord desired to keep in his house or get rid of an-

other person who was occupying a room in it, it was not competent to prove a conversation between an agent of the landlord and a police officer at the police station in reference to securing the services of the police to remove the tenant.

JOHN B. O'NEAL for appellant.

O. M. ROGERS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee brought this suit against the appellant to recover six hundred dollars that he alleged he had deposited with her for safe keeping and that she had refused to return on demand.

The appellant, for answer, admitted receiving the money and averred that she had paid it to him, so that the only issue between the parties was whether the appellant had paid to appellee the money. The jury, after hearing the evidence introduced in behalf of both the parties, and being properly instructed, found that she had not, and there was a judgment against her for six hundred dollars.

The only ground of reversal urged by counsel for appellant is that the court committed error in excluding competent evidence, and a suggestion that the verdict is not supported by sufficient evidence.

The evidence upon the issue as to whether appellant returned the money to appellee is very conflicting, but there is abundant to support the finding of the jury.

On the other question there was some evidence for appellee tending to show that appellant, in whose house he was rooming as a transient, attempted to keep him there by the use of whiskey or drugs, while there was evidence for the appellant to the effect that appellee's habits and conduct were so offensive that she was anxious to have him out of the house and resorted to every practicable means to get him out.

For the purpose of supporting her theory that she wished to get rid of appellee as a roomer, she offered to prove by C. B. Schoberg, a friend of hers, that at her request he went to the police station for the purpose of getting the police to come and take appellee out of the house. The court permitted Schoberg to say that he went to police headquarters and talked to Lieut. Martin, and also permitted him to be asked and answer these questions:

"Did you go to the police office? A. Yes, sir. Q. Were you advised there as to taking him out, or not? A. I was. I was told to go back and try to manage him;" but the court refused to permit the witness to answer that "Lieutenant Martin directed him not to take Mc-Donald away, but said if he did not get any better or got any worse and gave trouble, they would come and get him."

Lieut. Martin, introduced as a witness for appellant, was asked: "Q. I will ask you if Squire Schoberg ever visited you at the police station for any purpose in June, 1912? A. Yes, sir. Q. What did he come there for and what did he say?" To this question objection was made and sustained, and it was avowed that the witness would say that "Schoberg came to the police station and requested him to send the wagon to Mrs. Scullys house to remove McDonald to the station, and that he suggested to Schoberg to postpone that, and if the old man got worse or became disorderly they would come and get him."

The court permitted the appellant and her witnesses to describe fully her desire to have McDonald out of her house and Schoberg was permitted to say that he went to see the police for the purpose of having appellee removed from the house. The court only excluded the conversation that occurred between Schoberg and Lieut. Martin, and clearly this conversation was not competent. What Martin said to Schoberg was only in response to statements made to him by Schoberg in the absence of the appellee, and when Schoberg was allowed by the court to describe the condition of McDonald and the desire of appellant to have him out of the house, there was no reason why he should also be permitted to tell what the policeman said to him or why the policeman should be permitted to relate the conversation. The policeman did not know anything about the affair except what Schoberg told him, and what he said in reply was only his opinion, based on Schoberg's statement. The court should have excluded the whole conversation between Martin and Schoberg as hearsay.

It appears from the record that the court allowed the testimony on both sides to take a wide range, and every competent and relevant fact and circumstance that either of the parties desired to go to the jury was admitted. In short, the jury had a full and accurate de-

scription of all the acts and conduct and declarations of both parties that served to throw any light on the issue, and we have no doubt reached a just conclusion.

The judgment is affirmed.