## Allen v. Commonwealth.

(Decided June 22, 1917.)

### Appeal from Graves Circuit Court.

1. Criminal Law—Conspiracy—Evidence—Corroboration.—Evidence examined and held to authorize a submission of the case to the jury; that evidence of alleged conspirators implicating appellant, was corroborated by other evidence, and that the verdict of the jury is not palpably or flagrantly against the evidence.

2. Criminal Law—Accomplices—Evidence—Submission to Jury.— Where the evidence is conflicting as to whether or not a witness is an accomplice, the question should be submitted to the jury upon proper instruction, but there is no evidence here upon which the witness could be convicted as a principal, aider, abetter or accessory and the court properly did not submit the question to the jury.

3. Criminal Law—Confession—Instructions.—An instruction is required as to the effect to be given to a confession made out of court by the defendant, but not as to a mere admission.

4. Criminal Law—Evidence—Appeal and Error.—Depending upon the circumstances it may or may not be prejudicial error to admit evidence in rebuttal that should have been introduced in chief; such an introduction of evidence out of regular order held not prejudicial in this case.

5. Criminal Law—Conspiracy—Acts and Declarations.—Statements of one conspirator made after the commission of the criminal act of the conspiracy are ordinarily not competent evidence against other conspirators, but where the objects of a criminal conspiracy are not attained by the criminal act, statements made by any of the conspirators before the distribution of the fruits or profits- of the criminal act with reference thereto, are competent evidence against all of the conspirators, as are also statements made after the commission of a crime in an effort to prevent the discovery of the crime or the identity of those connected with its perpetration.

6. Criminal Law—Conspiracy—Acts and Declarations.—The indictment having charged appellant in conjunction with others, with having conspired to burn a particular building, it was not error to permit proof of the whole conspiracy which included burning at the same time other buildings; or to admit evidence of an agreement made between other conspirators without the knowledge of appellant as to the method by which loss from the destruction of property by a fire was to be proven in order to collect insurance thereon, the collection of the insurance being the object of the conspiracy, or to permit the contradiction of appellant's witness by telephone operators that he did not talk over the telephone with one of the witnesses for the commonwealth who had testified to such a conversation in reference to the alleged conspiracy, the telephone operators not being permitted to testify as to the conversation, but simply to the fact that a conversation was held by the parties at the time and place stated by appellee's witness and denied by appellant's witness, both of whom were alleged conspirators.

7. Criminal Law—Argument of Counsel.—Statements made by the attorney for the Commonwealth in the closing argument to the jury, to which objection is made, considered and held not to have been prejudicial.

W. J. WEBB, SPEIGHT & DEAN, J. E. WARREN, ROBBINS & ROBBINS, B. C. SEAY and S. H. CROSSLAND for appellant.

BUNK GARDNER, H. J. MOORMAN, M. B. HOLIFIELD, F. B. MARTIN, BEN ADAMS, M. M. LOGAN, Attorney General, and LOGAN N. ROCK, Special Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On the night of July 22, 1912, at about eleven o'clock, the tobacco barn of Gardner and Walker, located in the

northeastern part of the city of Mayfield, Kentucky, was discovered to be on fire. Almost immediately after the city fire department had gone to this fire, a fire was discovered in the western part of the city about half a mile distant from the first fire, in what is known as the tobacco district, and this fire proved to be a tobacco barn owned by G. R. Allen and W. A. Usher, in which purchases of tobacco were being handled by B. W. Wright and V. E. Allen, and which will be hereafter referred to as the Wright-Allen barn. Shortly after the discovery of this fire another fire was discovered some distance north, which proved to be the residence owned by Lee Perkins. The Wright-Allen barn was in the immediate vicinity of several other tobacco barns, some two or three of which also burned, and whether separately set on fire or ignited from the Wright-Allen barn is not clear from the evidence. A few days later Lee Perkins was arrested charged with burning his house, the Wright-Allen barn and the Gardner and Walker barn, and a warrant was issued charging B. W. Wright with burning the Wright-Allen barn. Shortly thereafter a warrant was issued charging G. W. Gordon with burning the Wright-Allen barn. Perkins, Wright and Gordon, upon examining trials, were held to answer the charges and Perkins made a confession, in which he admitted burning his own house, and that the Wright-Allen barn was burned as the result of a conspiracy between him, Gordon and Wright, and an indictment was returned by the grand jury charging these three persons with conspiring to burn and having burned the Wright-Allen barn, to which indictment Perkins entered a plea of guilty, was convicted and sent to the penitentiary. Usher and G. R. Allen, the owners of the Wright-Allen barn, carried five hundred dollars insurance on it and B. W. Wright and V. E. Allen, who owned the tobacco contained therein, carried five thousand dollars insurance on the tobacco. The insurance companies paid the loss of five hundred dollars on the tobacco barn and paid losses on the other barns and tobacco burned, amounting to something over sixty thousand dollars, but refused to pay to Wright and V. E. Allen the insurance on the tobacco owned by them and burned in the Wright-Allen barn. Wright and Allen then instituted suit against the insurance companies to enforce payment of their policies aggregating five thousand dollars, upon the trial of which case Perkins testified to a conspiracy between him, Gordon and Wright to burn this barn and collect the insurance on the tobacco contained therein.

Gordon and Wright both testified, contradicting Perkins' testimony, as did also S. R. Douthitt, not then, but later connected with the conspiracy. This trial resulted in a hung jury. Two other trials were had of these civil cases in both of which Perkins, Wright, Gordon and Douthitt testified as upon the first trial and both of these trials resulted in a verdict and judgment in favor of plaintiffs, which were reversed by this court. At the June, 1913, term the indictment against Wright was tried and he was convicted upon the charge of conspiring with Gordon and Perkins to burn the Wright-Allen barn, which judgment was affirmed by this court in November, 1914, as reported in 155 Ky. 750. At the March, 1914, term of court, Gordon was tried upon the same charge, and the jury failed to agree. Perkins, Gordon, Wright and Douthitt all testified as in the former trial. In January or February, 1914, Mr. A. L. Brand, of Mayfield, Ky., became connected with the Fire Marshall's office as a deputy, and was so engaged until July or August, 1914, when he became connected with the Thelle Detective Agency, Chicago, for the purpose, as stated by himself, of ferreting out the origin of these fires. Up until this time, neither the appellant, G. R. Allen, nor his son, V. E. Allen, had been accused of being implicated in the burning of any of these barns. Shortly after Brand's employment by the detective agency, Gordon accompanied him to Chicago and at the next term of the grand jury thereafter, gave testimony upon which an indictment was returned against appellant, G. R. Allen, his son, V. E. Allen, Hardy Houseman and S. R. Douthitt, charging them with having conspired with Perkins, Gordon and Wright to burn the Wright-Allen barn, and that in pursuance of this conspiracy the barn was burned for the purpose of collecting the insurance upon the barn and its contents. After the return of this indictment, Douthitt made a confession to Brand implicating G. R. and V. E. Allen in the burning of these several barns. Thereafter, Douthitt reported his confession to Mr. Usher, who owned a half interest in the Wright-Allen barn, and to an attorney for Mr. Allen, representing to them that he had made this confession for the purpose of trapping Brand and a Mr. Flannagan, who was also connected with the Theile Detective Agency, that Brand had paid him five hundred dollars in cash and agreed to make further payments of large amounts of money. Usher and the attorney advised Douthitt to procure from the representatives of the detective agency a written contract

evidencing his agreement with them and this Douthitt did and left the contract with the attorney for safe-keeping. At the November, 1915, term of the court the indictment against Allen was called for trial and he announced ready, but the Commonwealth moved for a continuance, which motion was overruled, whereupon the Commonwealth's attorney moved to dismiss the indictment against Allen and resubmit it to the grand jury, which motion was overruled, and thereupon the Commonwealth's attorney moved to dismiss the indictment, which motion was sustained, and the indictment was dismissed. Immediately thereafter the grand jury returned another indictment against G. R. Allen, V. E. Allen and S. R. Douthitt, charging them with having conspired with Wright, Gordon and Perkins to burn and with having burned the Wright-Allen barn with a felonious intent to collect the insurance upon the barn and its contents. Upon this indictment the appellant, G. R. Allen, upon a separate trial, at the March, 1917, term of court, was convicted and sentenced to the penitentiary for not less than one nor more than six years, and from that judgment is appealing, relying upon the following grounds for a reversal:

First: That the court erred in overruling the motion for a peremptory instruction.

Second: That the court erred in the admission of evidence.

Third: That the instructions were erroneous.

Fourth: That the verdict is palpably against the evidence; and

Fifth: Misconduct upon the part of the attorney for the Commonwealth who made the closing argument.

1. The evidence is overwhelming and conclusive that these fires were of incendiary origin. Upon this trial, Wright, Douthitt, Gordon and Perkins all testified that the various tobacco barns that were burned on the night of July 22, 1912, were burned in pursuance of a conspiracy to burn them, in order to collect the insurance, although all of them except Perkins had, upon previous trials, stoutly denied the existence of a conspiracy. Douthitt and Gordon both testified positively that the appellant, G. R. Allen, was a party to that conspiracy, although Douthitt had confessed, then repudiated his confession, and on this trial, at first, denied knowledge of appellant's connection therewith, in so far as the Wright-Allen barn was concerned, but later changed his testi-

mony, detailing the time and place of a conversation with appellant before the fire, in which the whole plan to burn the barns, including the Wright-Allen barn, was discussed. Wright and Perkins testified to the existence of a conspiracy, but denied that appellant had any connection therewith. According to the testimony of all these witnesses the main purpose of the conspiracy was to burn the storage warehouse known as the Enterprise shed, located some distance from any of the barns that were burned, since in that and adjoining warehouses was stored a very large quantity of low grade tobaccos upon which there was insurance amounting to, at least, one hundred and ninety-four thousand dollars, but for some reason this warehouse was not burned, which is not satisfactorily explained in the evidence, unless it was because the pitch on the roof would not ignite, as Douthitt testified appellant told him after the fire. The conspiracy, as proven, contemplated that the Gardner and Walker barn should be set on fire first, as it was, and that after time had been allowed for the fire department to reach that place, which was about half a mile distant from the other barns to be burned, they should be fired; so that with the fire department at work at the Gardner and Walker barn, there would be but a slight chance to extinguish the fires in either of the two districts where it was hoped to destroy the insured tobacco; that at this time the tobacco market was demoralized, prices were low and but few sales were being made; that the several conspirators being largely interested in tobacco stored in the warehouses that were to be burned were facing financial ruin or great loss which they believed could be averted by burning the tobacco and collecting the insurance thereon. All of the alleged conspirators, except Perkins, had financial interest in the tobaccos to be burned and appellant especially was heavily interested in the tobacco stored in the Enterprise shed and adjoining warehouses.

Counsel for appellant argue that he was entitled to a directed verdict because no motive was proven for his participation in the conspiracy; that the evidence of alleged co-conspirators was not corroborated as required by section 241 of the code; that the two alleged conspirators, Gordon and Douthitt, who gave evidence against appellant, are proven unworthy of credence and that their evidence is shown to have been elicited by Brand by bribes and promises of immunity from prosecution for their own connection with the crime.

It is insisted no motive was proven because of the fact that there was but five hundred dollars of insurance on the Wright-Allen barn in which appellant owned a half interest, and which barn, he testifies, was worth about fifteen hundred dollars, and from the further fact that appellant was largely interested in the tobacco stored in the Western District warehouse, located across the street from the Wright-Allen barn, which tobaccos it is conceded were not over-insured; and that he would have been the loser in a large amount if the Western District warehouse had burned, which was reasonably to be anticipated from a fire in the Wright-Allen barn. But the testimony of the conspirators who testified for the Commonwealth proves that this contingency was considered and steps taken to prevent the burning of the Western District warehouse, and this warehouse, in fact, did not burn. It is also argued that no motive is proven because it is not definitely shown that appellant would have profited financially from the destruction of the tobaccos stored in the Enterprise shed, and adjoining warehouses, but the Commonwealth did prove that in these particular buildings, which, through some miscarriage of plans, did not burn, large quantities of tobacco were stored, in which appellant was heavily interested and upon which very large amounts of insurance were carried, and appellant and those witnesses who testified in his behalf and who were in possession of the information, although frequently and persistently requested to do so, did not furnish accurate information as to either the amount of tobacco stored therein or the insurance thereon. This information could have been given by appellant, and if it would have proven that the tobacco stored in these warehouses was not over-insured and that the fire as planned would not have been profitable to him, we cannot understand why appellant and his witnesses, who certainly had the information, uniformly and persistently refused to give the accurate information that would have been very valuable to his defense.

The facts proven, that appellant was largely interested in the tobacco to be burned; that the tobacco was insured in large amounts; that the insurance companies were cancelling the insurance on same, and that the tobacco market was so demoralized that financial ruin or heavy losses seemed inevitable, was, in our judgment, sufficient proof of a motive for appellant's participation in the conspiracy.

As a further argument that the motion for peremptory should have been sustained, counsel for appellant insist that the testimony of the alleged co-conspirators that appellant was involved in the conspiracy is not to be believed and is lacking in the corroboration necessary to a conviction under section 241 of the Criminal Code. Dave Bellew, a witness introduced by the Commonwealth, testified that, two days before the fire, appellant and S. R. Douthitt offered him two hundred and fifty dollars to burn the Griffith shed, otherwise known as the Enterprise shed, and that he declined the proposition. Counsel for appellant concede that this would have been sufficient corroboration of the testimony of co-conspirators if Bellew himself had not been an accomplice, which they claim is proven by the evidence, or at least from the evidence it was a question for the jury to decide upon proper instruction, whether or not he was an accomplice. This claim is based upon the fact that S. R. Douthitt, in his testimony, answered "yes" to the question, "Now you say Dave Bellew was to burn the shed?" But Douthitt had not said that Bellew was to do anything, and his testimony immediately preceding this question and answer shows that he had no information as to whether or not Dave Bellew had agreed to burn the shed, as his only testimony in reference to Bellew was in answer to a question of what was the result of his conversation with Wood Gordon about burning this barn, as follows: "Well, Wood said he couldn't do it and then Bud Cochran suggested Dave Bellew and brought him up and introduced him to me and Bud said that he was all right and was the very man to do it—I didn't know anything about Dave Bellew at that time." It is apparent from Douthitt's testimony, that when he said that Bellew was to burn the Enterprise shed, he was simply giving his understanding about the arrangement, but that he himself had not made any arrangement with Bellew, and no witness testified that Bellew had ever agreed to accept this employment that was offered to him. He was in no way interested in any of the tobacco and unless he did agree to the proposition made to him, he was, of course, not an accomplice, and in our judgment the evidence did not warrant a submission to the jury of the question of whether or not he was such an accomplice. Lovering v. Comth., 132 Ky. 166; Richardson v. Comth., 166 Ky. 579; Elmendorf v. Comth., 171 Ky. 422; Orkley v. Comth., 158 Ky. 471.

It was also proven for the Commonwealth, by both Mr. R. F. Wright and his wife, that upon the next day, after the affirmance by this court of the judgment of conviction against Bolin Wright, who was not a relative of these witnesses, appellant went to their house early in the morning before they were out of bed and requested R. F. Wright to go to the jail to see if he couldn't prevent Bolin Wright from "talking his head off," as appellant said he was doing, and that in that conversation appellant expressed the fear that Bolin Wright would "give them all away," as stated by Mr. Wright, or that he will "give us all away," as stated by Mrs. Wright. Counsel for appellant contend that this was a confession, if anything, and that it ought not to have been submitted to the jury except under an instruction as provided by section 240 of the Criminal Code; but this clearly was not a confession; it was simply an admission upon the part of the appellant that he was in some way interested in keeping Bolin Wright from divulging what he knew with reference to the burning of these barns, and as such it was competent evidence for the consideration of the jury and was some evidence at least corroborative of the testimony of the alleged co-conspirators that appellant was involved in the conspiracy and no instruction in reference thereto was necessary. Wright v. Comth., 155 Ky. 755.

R. F. Wright was recalled after appellant had introduced his evidence in chief and permitted to testify, over objections of appellant, that prior to the fire, upon being informed by the witness that he didn't want to lose everything he had, appellant said to him: "There is a way out. You have some insurance—take out some more, go to one of these bulks of tobacco, dig out a hole, saturate it with oil, stick a candle in it and then go on about your business. Vic said a good way to do was to have a lot of tobacco hanging up on a stick and scatter it." This evidence, unquestionably, was some evidence worthy of consideration by the jury that appellant was connected with the conspiracy then forming and which soon thereafter resulted in this fire, and was, therefore, of course, substantive evidence and should have been introduced in chief. That it was not introduced in chief and was permitted to be introduced in rebuttal, over objection, appellant insists was prejudicial error; but, if error, certainly it was not prejudicial, as appellant was permitted to testify thereafter that he did not make the exact statement attributed to him by the witness, and that such statements that he did make, in reference to

burning tobacco, were made jokingly. Substantive evidence should be introduced, of course, in chief, but it is not always error to permit its introduction in rebuttal, as the trial court has a large discretion in such matters. Childers v. Comth., 161 Ky. 448; Collet v. Comth., 121 S. W. 427; Berkley v. Comth., 164 Ky. 195. But whether error or not in this particular case, we need not decide, because appellant was in nowise prejudiced thereby, since he was permitted to and did testify with reference thereto and was not denied the opportunity of meeting this evidence as fully as he could have done had it been given in chief. A great many witnesses were introduced on both sides, the larger part of a week was consumed in its introduction, and common experience teaches all that under such circumstances it is almost impossible to strictly observe the rules for the orderly introduction of evidence; and, to prevent a reversal for such errors in the trial as are not prejudicial to the substantial rights of the accused, sections 340 and 353 of the Criminal Code, were enacted.

There are many other circumstances and facts in the proof which, considered separately, are of but slight significance, but which, when taken together and in connection with the other evidence, are corroborative of the testimony of the alleged co-conspirators, that appellant was a party to the conspiracy and we do not think it was error upon the part of the trial court to overrule the motion for a peremptory instruction.

2. Alleged incompetent evidence.

Douthitt testified that on a Saturday night, after the fire, arrangements were made between him and appellant for Douthitt and V. E. Allen to go to Gordon's home on the next day and make some deal with him to testify in behalf of the Allens in the civil and criminal cases. Douthitt was permitted, over the objections of the defendant, to detail the conversation that occurred between V. E. Allen and Gordon and himself, in which Allen sought to purchase the testimony of Gordon, appellant not being present. V. E. Allen, testifying for defendant, admitted making the trip with Douthitt to see Gordon and upon cross-examination was asked by the attorney for the Commonwealth what occurred at Gordon's house, in answer to which he made an explanation of how he came to make the trip and what occurred there entirely different from that testified to by Douthitt. Attorneys for the Commonwealth then asked if he didn't make a certain proposition to Gordon, which he denied. At the con-

clusion of defendant's evidence the court permitted Gordon, Brand, McLean and Brown, who were present—the three latter being in hiding for the purpose of hearing the conversation—to testify as to the statements made by Vic Allen to Gordon on that occasion. Appellant contends that this evidence, if substantive, should have been introduced in chief, and it was prejudicial error to introduce it in rebuttal and if not evidence in chief it was not admissible at all, because V. E. Allen had testified as to what took place at Gordon's house, in answer to questions for the Commonwealth and upon that matter was the Commonwealth's witness, and it was bound by his answers and could not introduce evidence in contradiction thereof. The court admonished the jury that it could consider the statements of these witnesses, except Douthitt, to impeach the testimony of V. E. Allen only, but not as to the guilt or innocence of the defendant. In our judgment this evidence was substantive evidence and therefore should have been introduced in chief, but we are clearly of the opinion that its introduction in rebuttal with the court's admonition was not only not prejudicial to appellant, but by reason of the court's admonition was robbed of its real value. While it is true that statements of conspirators made after the commission of the criminal act of the conspiracy are ordinarily not competent evidence against their co-conspirators, yet where the object of the conspiracy had not been fully attained by the criminal act, statements made by any of the conspirators, with reference to the distribution of the fruits or profits of the criminal act which was but an incident in the conspiracy to procure the profits, are competent evidence against all of the conspirators, as are also statements made after the commission of a crime in an effort to prevent the discovery of the crime or the identity of those connected with its perpetration. 3 Enc. of Evidence 432; U. S. v. Lancaster, 44 Fed. Rep. 902; People v. Trimble, 39 Cal. 75; Pacific Live Stock Co. v. Gentry, 38 Ore. 275; State v. Pratt, 121 Mo. 566; People v. Opie, 123 Cal. 295; Barber v. State (Texas), 69 S. W. 516; Byrd v. State, 68 Georgia 661; Carter v. State, 106 Georgia 377.

Civil suits were still pending in which it was sought to recover the insurance upon the tobacco burned in the Wright-Allen barn, and criminal prosecutions were pending against all of the alleged conspirators except Perkins and Wright, who had been convicted. The very purpose of this conspiracy, as alleged in the indictment

and proven, was to collect the insurance; the fires were but incidents. The testimony that Gordon was being importuned to give by one of the alleged conspirators, if the attempt had been successful, would have been available in the suits to recover the fruits of the criminal act of the conspirators and in the criminal prosecution to conceal their guilt, for either of which reasons it was competent evidence against all the conspirators whether present or not. Its introduction in rebuttal rather than in chief, if error, was more than offset by the court's admonition that this evidence could be considered only for the purpose of contradicting the testimony of V. E. Allen.

The indictment charges appellant, and those named therein as, co-conspirators, with conspiring to burn the Wright-Allen barn only and counsel for appellant insist most earnestly that it was error to admit the evidence of the conspiracy to burn the other barns that were burned at the same time, but especially prejudicial to admit evidence of a conspiracy in connection with the burning of the Farmers Union tobacco warehouse, which burned on June 19th, over a month before the other barns were burned. While appellant was charged in the indictment only with conspiring to burn the Wright-Allen barn, it was shown conclusively by the proof that the burning of this barn was but a small part of a larger conspiracy to burn not only the barns that were burned on the night of July 22nd, but the Enterprise sheds as well, and if the Commonwealth were not permitted to prove the whole of the conspiracy that included the burning of the Wright-Allen barn, it would have been utterly impossible to have proven the conspiracy with reference to the Wright-Allen barn at all, because that was but a part of a whole and was so interwoven and connected with the conspiracy to burn all of the barns that there was no possible way to separate the evidence so as to confine it alone to the Wright-Allen barn. This case clearly is within the exception to the rule. against evidence of extraneous offenses, as is laid down in Raymond v. Commonwealth, 29 Ky. L. R. 789, where the court said:

"The exceptions to the rule, as herein stated, are those cases where the commission of other offenses tend to show the intent with which the act is committed, or the guilty knowledge of the defendant, or where the two crimes are so interwoven that one cannot be proved without the production of the facts which constitute the evidence of the other."

And in Jenkins v. Comth., 167 Ky. 559, this court quoted with approval from 8 Cyc. 684, as follows:

"Where the guilt of a party depends upon the intent, purpose or design with which an act is done, or upon his guilty knowledge thereof, collateral facts in which he bore a principal part may be examined into for the purpose of establishing such guilty intent, design, purpose or knowledge. It is sufficient that such collateral facts have some connection with each other as a part of the same plan, or as induced by the same motive, and it is immaterial that they show the commission of other crimes."

See also Rowe v. Comth., 164 Ky. 334; Richardson v. Comth., 166 Ky. 570; Clary v. Comth., 163 Ky. 480; Head v. Comth., 133 Ky. 452. Under these authorities the evidence was clearly competent, with reference to all of the barns burned at the same time as the Wright-Allen barn as part of the one conspiracy.

The burning of the Farmers Union warehouse on June 19th is referred to in the evidence, but as stated in brief for appellant: "It is not contended by any witness in the case that the burning of what is known as the Farmers Union barn on June 19, 1912, was any part of the conspiracy to burn the Usher and Allen barn." The references to the Farmers Union barn were simply incidental and unavoidable in fixing the times, &c., of relevant facts, and we are unable to find in the evidence any reference to this fire to connect appellant therewith or to discover a reference thereto that was erroneous, much less prejudicial to appellant.

Bolin Wright, who in partnership with V. E. Allen, was engaged in the tobacco business in the Wright-Allen barn, and who was convicted and has since confessed that he set fire to the barn pursuant of a conspiracy between Gordon, Perkins and himself, testified in chief that before the fire he and V. E. Allen issued bogus checks amounting to between three and four thousand dollars, to be used as evidence, after the fire, to prove that there was a larger quantity of tobacco in the barn than the amount of insurance thereon. Appellant insists that this evidence introduced, over his objection, was incompetent and prejudicial. While Bolin Wright exonerates appellant and V. E. Allen from the conspiracy to burn these barns, the evidence of Douthitt and Gordon implicates them in that conspiracy, and this evidence, as we have heretofore pointed out, was corroborated by other evidence which had theretofore been introduced, sufficient

to warrant the court in admitting statements of any of the alleged conspirators in the furtherance of their design, and this evidence was unquestionably competent against appellant, although knowledge upon his part of the agreement between Wright and V. E. Allen to issue these bogus checks, is not proven.

Douthitt testified that after the indictment was returned against appellant, he requested the witness to go to Paducah in an effort to get Dave Bellew out of the way as a witness against appellant; that pursuant to this request and under arrangement with V. E. Allen, the witness went to Paducah to see Bellew, but found that he had gone to Hot Springs, Arkansas; that witness then proceeded to Hot Springs, to see Bellew, in an effort to get him not to testify; that while he was in Hot Springs upon this mission he had two conversations over the telephone with V. E. Allen in Mayfield, in reference to seeing Bellew. This evidence was contradicted by V. E. Allen, testifying as a witness for the appellant. In rebuttal, the Commonwealth introduced telephone operators at Mayfield, who testified that upon that date V. E. Allen, at Mayfield, Kentucky, and Douthitt, at Hot Springs, Ark., had two conversations over the telephone, but they were not asked and did not testify as to what these conversations were about. Counsel for appellant insists that this evidence of the telephone operators was incompetent and prejudicial, but in our judgment it was entirely competent for the purpose of contradicting the testimony of V. E. Allen that he had not held any such conversation over the telephone with Douthitt, as testified to by Douthitt.

3. But two errors are suggested in the instructions given by the court. The one, that it was error upon the part of the court not to instruct the jury as to what constituted an "accomplice" and to submit to the jury whether or not the witness Dave Bellew was an accomplice, and the other that the testimony of R. F. Wright and Mrs. R. F. Wright as to the statements made to them by appellant was a confession, and should have been submitted as such under a proper instruction for the consideration of the jury. Both of these objections have already been decided adversely by us in the former part of this opinion, in which we were considering the evidence of these witnesses upon the question of whether or not there was sufficient evidence to take the case to the jury, and we need not further discuss either of these propositions.

4. It is insisted by counsel for appellant that the verdict of the jury is palpably against the evidence, but to this contention we cannot agree. Since the 1910 amendment to section 281 of the Criminal Code, this court has the authority to weigh the evidence in a criminal case as in a civil case, and if the verdict of the jury is palpably or flagrantly against the evidence, to order a reversal therefor. Wilson v. Comth., 140 Ky. 63; Blanton v. Comth., 147 Ky. 817; Tucker v. Comth., 140 S. W. 75. The evidence is conflicting as to appellant's participation in the conspiracy, but the evidence is conclusive that a conspiracy existed and that the tobacco barns, including the Wright-Allen barn, were burned in pursuance of that conspiracy. The four conspirators that have confessed to a part in that conspiracy give conflicting testimony. Two of the four state positively that appellant was not only a party to the conspiracy, but first suggested it. The testimony of Dave Bellew is positive that appellant attempted to procure his assistance in carrying out the plans of the conspirators. Mr. and Mrs. R. F. Wright testified that appellant, upon hearing that Bolin Wright, after the judgment of his conviction had been affirmed, was giving evidence of an intention of making a confession, was so disturbed thereby that he came to Mr. Wright, early in the morning, before they were up, in an effort to prevent Bolin Wright from making a statement that might "give them all away," or "give us all away." Although Lee Perkins and Bolin Wright had been arrested charged with burning the Wright-Allen barn, of which appellant owned one-half and his son owned half of the tobacco burned therein, yet when Perkins and Bolin Wright were arrested charged with burning this property, appellant went upon the bond of one and his son, V. E. Allen, became the bondsman for the other. Appellant told R. F. Wright, before the fire, that to save himself from loss on his tobacco purchase he could take out additional insurance and burn the tobacco, and in describing how he could burn it detailed the manner in which Bolin Wright testified that he set fire to the Wright-Allen barn. Four witnesses, two of whom at least were entirely disinterested, and whose evidence there was no attempt to impeach, testified that the son of appellant, in company with S. R. Douthitt, who testified that appellant arranged for the conference with Gordon, made an effort to procure Gordon to testify in appellant's behalf, and that as an inducement therefor Gordon was offered a small

farm; that his family would be taken care of while he was in prison and his son sent to school, at V. E. Allen's expense.

There is also some evidence that appellant, contrary to custom, carried his own insurance instead of having the warehouse company carry it. Upon the other hand, appellant is proven to have lived in the community where the trial was had for more than thirty years; that he is sixty-four years of age; that he is wealthy; that until this charge was brought against him he had been universally recognized as a good citizen. He denies absolutely any connection with or knowledge of the conspiracy, and in this he is corroborated by his son, Bolin Wright and Lee Perkins, jointly indicted with him, and by Hardy Houseman and J. E. Wilson, accused of the same offense in another indictment. The effect of the evidence of Gordon was attempted to be overcome by evidence that he was hired to swear falsely against appellant by Brand and Flannagan. In the same way Douthitt's testimony is attempted to be discredited and in addition he, at first, testified that G. R. Allen, whom he implicated in the burning of the other barns, had, so far as he knew, no connection with the conspiracy to burn the Wright-Allen barn, with which the indictment charged him, and connected Allen with it only after he had left the witness stand and was recalled to correct his former testimony. It is not clearly shown that appellant would have profited from the fires, even if all the plans had been successfully carried out, but neither did appellant show that the fires would not have been profitable to him if the Enterprise shed had been burned as contemplated and he had the ability to produce this evidence which the Commonwealth did not have. It is inevitable that there should have been contradictions in the evidence and it was not unnatural that those who were guilty participants in the crime should have denied their own guilt and knowledge of the guilt of co-conspirators as long as they thought they had an opportunity to escape detection, and the fact that Douthitt, Gordon and Wright denied, for a long while, that they had any connection with the crime and later made a confession, does not necessarily deprive their evidence of value. That Gordon and Douthitt had been bribed to give evidence against appellant is denied by them and by Brand who is alleged to have done the bribing. Douthitt and Gordon testified that they had not been promised im-

munity from prosecution for their crime, which is also testified to by the attorneys for the Commonwealth, although there is evidence in the record from which bribery and promises of immunity might have been inferred.

That they were not bribed and did not swear falsely against appellant evidently was believed by the jury. The guilt or the innocence of the apppellant depends upon the credibility of the witnesses who testified for and against him. The jurors presumably knew the witnesses, at least they had the opportunity to look them in the face while they were testifying and they were much better qualified than are we to determine which of the witnesses were testifying truthfully and which falsely, and we would be unable to say that the jury's verdict is palpably or flagrantly against the evidence unless we could say that the witnesses who testified for the Commonwealth as to appellant's guilt had testified falsely. Weighing the evidence as we would in a civil case, we are unable to say, under these circumstances, that the verdict of the jury is palpably or flagrantly against the evidence. Wright v. Commonwealth, 155 Ky. 756; Elmendorf v. Commonwealth, 171 Ky. 423; Renaker v. Commonwealth, 172 Ky. 729.

5. The attorney who made the closing argument for the Commonwealth was, at the time of the trial before a special judge, the circuit judge of the district, but had been employed before his election to represent the Commonwealth in this prosecution. It is insisted that in his argument to the jury he made statements which were not supported by evidence, which by reason of the fact that he was the elected circuit judge of the district had unusual weight with the jury and were especially prejudicial to appellant. Conceding that the elected circuit judge of the district, though not acting in his official capacity, but rather as an attorney representing his client, might have some unusual weight with the jury in making statements upon his own responsibility which were not authorized by the evidence, we shall consider separately each of his statements to which objections were made, the first of which is as follows: "That political harlot; that seller of post-offices who bought a little newspaper here in Mayfield to oppose me when I was a candidate for circuit judge." It is conceded by counsel for appellant that in this statement reference was made to one of the attorneys who had argued the

case for appellant and that it had no reference to appellant himself and counsel for appellee concede that the statement was not warranted upon the evidence. At the time the statement was made a motion was made by appellant asking the presiding judge to say to the jury that this statement was improper and should not be considered. At the time the court declined to so admonish the jury, but at the conclusion of the argument did so. Upon the motion for a new trial, one ground for which was the above statement, evidence was introduced which showed that this statement by counsel for appellee was in answer to a statement made by counsel for appellant about the attorney for the Commonwealth which was also outside the record and equally unbecoming and that there has existed, for some time, between these two lawyers, a feeling that is certainly not kind. The jury could not have misunderstood to whom the reference was made and we are unable to see how (though it was improper) it could have been in any way prejudicial to appellant, especially since the jury were admonished by the court that the statement was improper and should not be considered by them. That the admonition was not given at the time the statement was made, but was reserved until the completion of the argument, in nowise lessened its effect. See Burton v. Commonwealth, 151 Ky. 596.

The next statement objected to is as follows: "That when the Sam Douthitt case was called for trial it was continued because Judge Robbins had the headache." We do not know, of course, in what connection this statement was made, but we are utterly unable to conceive how it could have, in any way, influenced the jury to regard the evidence in this case as insincere and without merit, which counsel for appellant alleged was its purpose nor can we see how it could have had any bearing whatever upon this case or have been prejudicial to appellant.

The next statement objected to is as follows: "That the defendant demanded a separate trial of these cases, while we were willing to try them all together and they should have been all tried together." Again we must confess our inability to understand how this could have interfered with the defendant having a fair trial. It must have been made in answer to some argument made by attorneys for the other side and the trial court who

heard both the arguments, having considered it warranted, or at least unprejudicial and the statement not appearing prejudicial upon its face we would not be justified in ordering a reversal therefor.

The next statement is: "We can not find out how much tobacco they had in the Enterprise shed, but they did have a hundred and ninety thousand dollars insurance on the tobacco in the "Enterprise shed," which statement is shown to be true by the evidence.

The next statement is: "This conspiracy included the burning of this widow's property" is partly sustained by the evidence, Mr. John W. McDonald having testified that the Enterprise shed was owned jointly at the time of the fire by Mrs. N. C. Walker and Mrs. Prince Walker, but the evidence does not show whether or not these ladies or either of them were widows. While they should not have been referred to as widows, if, in fact they were not such, still the reference was not prejudicial unless it was untrue and counsel for appellant do not even claim that it was not true.

The next statement complained of is: "This crime that we are trying here is the leprous of twenty-five years of crime." If the attorney for the Commonwealth may not, in his argument, in an effort to secure a conviction, denounce the crime with which the defendant is charged then he is indeed to be confined within very narrow limits. It has always been considered as within the limits of legitimate argument to denounce the crime and to urge the conviction for the purpose of preventing crime. Meredith v. Commonwealth, 148 Ky. 112. This statement does not seem to us to be subject to criticism.

The next statement: "Allen had tried to get Will Eck Cash to stop paying the farmers what their tobacco was worth." This statement is sustained by the evidence of the appellant himself, Will Eck Cash and a witness named Gardner, and was first introduced in the evidence by appellant as a reason why Cash was unfriendly to him, as he testified that he was. Being supported by the evidence and that too introduced in the record by appellant himself, appellant manifestly is not entitled to a reversal on account thereof.

The next and last statement complained of is: "I want to say to you, in the presence of the court, that evidence of R. F. Wright given in rebuttal is substantive

evidence.'' Having heretofore decided that this statement was true, counsel was not in error in making it.

While it is, of course, hard to lay down a hard and fast rule with reference to argument of counsel, the scope which argument of the Commonwealth's Attorney may properly take was outlined in Housman v. Commonwealth, 128 Ky. 825, as follows:

''Much latitude is of necessity allowed an attorney in the presentation of his case; the only limitations being such as require him to confine himself to the facts introduced in evidence, and the fair and reasonable deductions and conclusions to be drawn therefrom, and the application of the law, as given by the court to the facts proven. Controlled, regulated, and bounded alone by these limitations, an advocate, may with perfect propriety, appeal to the jury with all of the power, force and persuasiveness which his learning, skill and experience enable him to command, and of this character of argument the accused may not complain even though he feels that his conviction may be traceable more directly to the argument of counsel than to the facts proven.''

We do not think counsel, in this case, violated the above rule, nor do we think any of the statements made by him are subject to the criticism which authorized a reversal in the cases cited by the appellant, i. e., Cook v. Commonwealth, 86 Ky. 666; Penefield v. Commonwealth, 13 Ky. L. R. 446; Wilson v. Commonwealth, 21 Ky. L. R. 133.

We have discussed herein all of the objections urged by counsel for appellant in their briefs and we have considered the other grounds assigned in the motion for a new trial, but do not deem it necessary to discuss them here.

Upon consideration of the whole record, we have been unable to find any error prejudicial to appellant's substantial rights, and the judgment is, therefore, affirmed.

Judge Thomas not sitting.