## Marcum v. Commonwealth.

(Decided January 11, 1924.)

### Appeal from Bullitt Circuit Court.

1. Criminal Law—No Complaint of Calling of Special Venire from Another County.—There can be no complaint on appeal that court erred in calling a special venire of jurors from another county under Criminal Code of Practice, section 194, in view of section 281, relating to decisions not subject to exceptions.

2. Criminal Law—Error in Admission of Evidence Cured by Testimony of Defendant.—If it was error to admit evidence about declaration of third party, in that it did not appear at the time that defendant was present at the time it was made, it was cured by subsequent testimony of defendant that she was present at the time.

3. Criminal Law—Declarations of one Conspirator in Absence of Another Incompetent.—It is incompetent to admit the declarations

of one conspirator in the absence of another conspirator, when the conspiracy has not been clearly established.

4. Criminal Law—Introduction of Testimony Supplying Defects Cures Error in Refusing to Give Peremptory Instruction.—Where a defendant moves for a peremptory instruction at the conclusion of the Commonwealth's evidence, and his motion being overruled, introduces his testimony, if that testimony supplies any fact or facts not shown by the evidence for the Commonwealth, and thus makes out a case, the reviewing court will not reverse because these facts were not shown by the Commonwealth.

5. Conspiracy—Evidence Sufficient to Take to Jury Conspiracy to Kill.—In a prosecution for a conspiracy to kill and murder, evidence held sufficient to carry the case to the jury.

6. Criminal Law—No Peremptory Instruction in Face of Evidence Tending to Establish Guilt.—It is only in the absence of any evidence tending to establish the guilt of the accused that the trial court is authorized to grant a peremptory instruction directing his acquittal.

7. Criminal Law—Court May Limit Argument.—It is entirely within the province of the trial court to limit argument to such a length as he may deem wise and proper, though at all times exhibiting a due regard for the rights of the defendant and the Commonwealth, especially where the party objecting had suggested that the case be submitted without argument.

HUGGINS & OLDHAM, C. P. BRADBURY, FLETCHER COMBS and C. A. FUNK for appellant.

THOS. B. McGREGOR, Attorney General, EDWARD L. ALLEN, Assistant Attorney General, and J. LEWIS WILLIAMS, Commonwealth's Attorney, for appellee.

OPINION OF THE COURT BY JUDGE ROBINSON—Affirming.

On the morning of December 24, 1922, Thomas Goldsmith, accompanied by his son Sam, left their home in a wagon with the intention of driving down to what was known as the rifle range in Bullitt county to secure some lumber that had been left at their old home, which was sold to the government and included in the army reservation, their present residence being about two and a half miles therefrom. After reaching the range they met Tom Marcum, husband of appellant, and Sol Dennison, a man employed by him. The latter two had with them a quart of whiskey from which the four took several drinks, during which time Marcum stated that he had come down there to secure some wire that had been left, and the senior Goldsmith volunteered to take it home for him.

This was agreed upon, and while the lumber was being loaded Marcum and Dennison, each having a gun, went further down the range to shoot rabbits, but returned shortly; and it appears that some difficulty arose between the younger Goldsmith and Dennison in which Marcum and Tom Goldsmith took part. After this was momentarily smoothed over, Goldsmith and his son having loaded their wagon, started to drive home, and while the evidence varies somewhat, it appears from the testimony of Sam Goldsmith that Marcum and Dennison mounted their horses and followed, threatening the lives of both the Goldsmiths. He states that they frequently pointed their guns at them, threatening to shoot, and followed them for some distance. Later they turned off the road and the Goldsmiths drove home. It is shown that before reaching Marcum's residence he and Dennison stopped, at which time the latter proceeded to tell him of certain alleged liberties that Tom Goldsmith endeavored to take with Luvenia, his thirteen-year-old daughter, who had spent the night with the Goldsmiths several days prior. It appears that the Marcums lived about one mile distant from the Goldsmiths, and shortly before this killing Marcum, accompanied by his wife (the appellant) went to Louisville to spend several days, and their daughter was invited to the home of the Goldsmiths, where she remained, sleeping in a room with the two younger Goldsmith children; and at seven o'clock the next morning Sol Dennison, the hired man, called for her, as it was his custom or Marcum's to take the children of the neighborhood to school. It is not shown that this girl had made any complaint whatever of mistreatment at the hands of Tom Goldsmith, nor had she imparted any knowledge of this to her father or mother; and that neither had heard anything of it until Dennison asked Marcum if his daughter had told him of the affair, and then proceeded to give a detailed account of it as said to have been told him by the girl. After this conversation Marcum and Dennison proceeded home by different routes and later in the afternoon Marcum and his wife, sitting on the back seat of their automobile with Dennison driving and Luvenia (their daughter) on the front seat, were seen to leave the Marcum home and drive toward the Goldsmiths'; and again the testimony varies largely as to succeeding events. However, the uncontradicted testimony of Mrs. Goldsmith is that standing in her kitchen she saw the Mar-

cums drive down the hill from their place to the road that passed her house, and a few moments before her husband had gone out to the horse lot and in just a short time she heard the report of a shot gun. She was churning and kept on with her work until her husband exclaimed, "Oh, I am shot; Jim Marcum shot me," and upon running to the door, she saw him staggering and he fell in her arms and repeated, "Jim Marcum shot me." In the meantime Goldsmith's son Sam had joined her, and as he was endeavoring to place his father in a more comfortable position, Marcum called to her and upon looking around she noticed that he was standing just outside the fence with a shot gun in his hand and his wife, Jennie Marcum, the appellant, just behind him within touching distance. She further states that Marcum said to her, "Mrs. Goldsmith, I shot the G— d— ——, and I hope he dies and goes to hell;" and then opened the gate and started towards her. At this time she had one hand on her husband's wound, and raising the other asked him to stop, saying, "You are no friend of mine; you have taken my husband away from me and my children and his old mother, and will you please leave here," upon which he turned toward the gate. She further testifies that appellant came into the yard with her husband and stood by his side and when he turned with the apparent intention of leaving, the appellant started toward her, rolling up her sleeves and walking rapidly; but upon being asked to leave, joined her husband, standing in the county road, and in a moment Dennison and their daughter who had remained in the machine drove up and took Marcum and his wife, the appellant, to their home.

The testimony of Sam Goldsmith is substantially the same as that of Mrs. Goldsmith. John Goldsmith, a nephew of the deceased, lived between the homes of the Marcums and the Goldsmith and about a quarter of a mile from the former. He testified that upon the day of the killing, while chopping wood, he heard loud voices coming from the Marcum premises, and recognized the voice of Jim Marcum saying, "I am going to get into the machine and go over there and put a stop to him damn quick if it takes everything I have got;" and that he further heard other voices but was unable to determine whether they were those of men or women. This was about 4:30 p. m., and in ten minutes he heard Marcum leave in his car and

shortly thereafter was notified by 'phone that his uncle had been killed.

Several other witnesses testified, but their evidence was not of an important nature.

A short time after this killing James Marcum was indicted and upon trial was convicted and sent to the penitentiary for five years; and at the April term of the Bullitt circuit court Sol Dennison and Jennie Marcum were indicted, charged with unlawfully, wilfully and feloniously entering into a conspiracy with each other and with James R. Marcum, the purpose of which conspiracy was to kill and murder Tom Goldsmith.

At the next term of the court the defendants were tried and found guilty by the jury, which fixed their punishment at two years in the penitentiary; and from that judgment this appeal is taken.

In their motion and grounds for a new trial, which was overruled, attorneys for appellant filed nine grounds upon which they relied for reversal. However, after carefully reviewing them we find but four with which we think it necessary to deal.

1. The court erred in calling a special venire of jurors from Nelson county before any effort had been made to obtain a jury in the county of Bullitt.

2. Incompetent evidence was admitted that was highly prejudicial to the appellant.

3. The court erred in overruling the motion of appellant to direct the jury to find her not guilty.

4. The court erred in limiting the argument of counsel for appellant to one hour.

In the first ground counsel for appellant contend that the court seriously erred in calling a special venire of jurors from Nelson county before having made a legal effort to satisfy himself that a jury could not be secured in Bullitt county. However, it would appear that the trial of Jim Marcum, husband of appellant, had been held a short time before the one in question, and the court was of the opinion that the jury summoned from Nelson county would be necessary. Counsel for appellant objected to this special venire, and supported their contention by citing section 194 of the Criminal Code, as follows:

"If the judge of the court be satisfied, after having made a fair effort, in good faith, for that purpose, that, from any cause, it will be impracticable to obtain a jury

free of bias in the county wherein the prosecution is pending, he shall be authorized to order the sheriff to summon a sufficient number of qualified jurors from some adjoining county in which the judge shall believe there is the greatest probability of obtaining impartial jurors, and from those so summoned the jury may be formed."

It will be observed, however, that this provision of the Code fails to specify clearly or outline positively in just what manner or by what procedure the court shall make this "effort" to secure jurors in the county wherein the prosecution is pending, and much depends upon the words "after having made a fair effort in good faith for that purpose." It is very possible that the legislature contemplated that any investigation or inquiry made by the court wherein he was of the belief that a proper jury could not be secured in the county wherein the offense had been committed, would be deemed a fair effort, and that his conclusion relative to this inability would be sufficient to warrant his directing the sheriff to summon a jury from some adjoining county. In any event, this point seems definitely settled by section 281 of the Criminal Code, in which we find the following:

"281. (1) Decisions not subject to exception. Decisions of the court upon challenges to the panel or for cause, or as to manner in which jury is selected, or as to qualifications of jurors are not subject to exception and the action of the trial court in respect to these matters, however erroneous or prejudicial to the accused, can not be reviewed on appeal." And in support of this see Curtis v. Commonwealth, 110 Ky. 845, 23 R. 267, 62 S. W. 886; Powers v. Commonwealth, 114 Ky. 237, 24 R. 1007, 70 S. W. 644; Vinegar v. Commonwealth, 104 Ky. 106, 20 R. 412, 46 S. W. 510; Logan & Tribble v. Commonwealth, 174 Ky. 80; Sergent v. Commonwealth, 133 Ky. 284; Thomas v. Commonwealth, 200 Ky. 591.

In the second ground attorneys for appellant contend that the court erred in permitting the witness, John Goldsmith, to testify that about 4:30 p. m., just before the killing, he heard James Marcum say, "Come on and get into the machine; I am going to put an end to him damn quick, if it takes everything I have got," as it was not shown that it was said in the presence of appellant, as the witness did not know where Mrs. Marcum was at the time the statement was made; and counsel for appellant moved the court to exclude this testimony. It may be conceded

that technically this was error at that time; however, it will be seen from a reading of the testimony introduced on behalf of appellant that it was clearly established that she was present, and if an error was committed, we feel that it was cured by the testimony of appellant, in which it was shown that she was present at all times.

True it is incompetent to admit the declarations of one conspirator in the absence of another conspirator when the conspiracy has not been clearly established; however, in this case the defendants made such testimony entirely competent by disclosing that appellant was present; and such being the case, she was not entitled to a peremptory instruction at the close of the testimony on behalf of the Commonwealth. We find in the case of C., N. O. & T. P. Ry. Co., &c. v. Cook's Admr., 24 R. 2152, the following:

"The rule is that where a defendant moves for a peremptory instruction at the conclusion of the plaintiff's evidence, and his motion being overruled, introduces his testimony, if that testimony supplies any fact or facts not shown by the evidence for the plaintiff, and thus makes out a case, this court will not reverse because these facts were not shown by the plaintiff before the motion for a peremptory instruction was made."

It is clearly shown by the testimony of appellant beginning on page 110 of the transcript of evidence that she was at home when her husband returned on the afternoon of the killing, and was talking to him at frequent intervals up and until she entered the machine when they drove towards the home of the Goldsmiths. This is further demonstrated by the testimony of Sol Dennison, one of the defendants, on page 81 of the transcript; also by the testimony of Luvenia Marcum, daughter of appellant, on page 126 of the transcript.

The third ground, that the court erred in overruling the motion of appellant to direct the jury to find her not guilty, is scarcely tenable, as we feel that the evidence discloses ample ground to carry the case to the jury; and in Pace v. Commonwealth, 170 Ky. 560, the court said:

"It is only in the absence of any evidence tending to establish the guilt of the accused that the trial court will be authorized to grant a peremptory instruction directing his acquittal."

And in Commonwealth v. Boaz, 140 Ky. 715, we find an appeal from the circuit court wherein one Boaz was

tried for murder and upon motion of his attorney the court gave peremptory instructions to the jury to find defendant not guilty of the offense charged, and an appeal to this court was taken by the Commonwealth. In an opinion by Judge Lassing the court said: .

"The trial court has the same right and authority to give a peremptory instruction in a criminal proceeding that he has in a civil action. And if the evidence introduced in behalf of the Commonwealth fails to incriminate the defendant, or is wholly insufficient to show that he is guilty of the offense charged, it is not only the right but the duty, of the trial judge to instruct the jury to return a verdict of not guilty. It is not, however, within the province of the trial court to take from the jury a criminal prosecution if there is any evidence, however slight it may be, conducing to show that the defendant is guilty of the offense charged, or any of its degrees mentioned in the Code."

And, further:

"It is now well settled in criminal cases that if there is any evidence tending to connect the accused with the commission of the crime, it is the duty of the trial court to submit the case to the jury. Applying this rule to the case at bar, we are of opinion that the peremptory instruction should not have been given."

A review of the testimony offered by appellant and witnesses in her behalf clearly demonstrated that upon the arrival of her husband at his home on the afternoon of December 24, two hours prior to the killing, she was there. She testified to several conversations with him, which is further proven by that of Dennison and her daughter, Luvenia. It is further shown that after the conversation Tom Marcum held with Sol Dennison, his hired man, relative to the mistreatment of his daughter, Luvenia, by Tom Goldsmith, appellant, accompanied by her husband and the others, entered the car on its fatal journey. True testimony is offered that the Marcums intended going to the home of a neighbor, Holsclaw, for the purpose of telephoning to the sheriff to come and arrest Tom Goldsmith; and further that upon arriving just opposite the Goldsmiths on a county road, Luvenia Marcum testified that Tom Goldsmith hailed her daddy, whereupon the car was stopped, and that Marcum and his wife left it and started in the direction of Goldsmith, the father carrying the shot gun on his arm; and though

apparently upon a peaceful mission, appellant could not have failed to observe while sitting with her husband on the back seat of the car, the shot gun, or have been unmindful of its purpose.  It seemed that Goldsmith was unarmed, and notwithstanding that appellant was by her husband's side, she made no outcry or apparent endeavor to prevent his wanton act, and stood mute while he mortally shot Goldsmith; and further, immediately after the shooting, while he was dying in the arms of his wife, she walked with him toward them, listening with apparent unconcern and approval to his unutterable oaths; rolling up her sleeves in a manner which, if not threatening, would appear an entire condonement of her husband's deed, with the prevention of which she seemed in nowise concerned.  And we can but feel that when Tom Marcum had heard the story of Sol Dennison, whether true or not, and again its repetition by his daughter, Luvenia, a conspiracy was at once formed and entered into to wreak vengeance upon Tom Goldsmith; and that in this conspiracy both appellant and Dennison were active participants, well knowing for what purpose they were going to the home of the Goldsmiths; that they drove there with the deliberate intention to murder the deceased in just the manner in which it was accomplished.  True in the evidence of Mrs. Goldsmith she stated that appellant, after the shooting, said: "Mrs. Goldsmith, do not blame me; I had nothing to do with it; I won't lie about it." However, this statement taken for what it is worth nowise tends to prove that appellant was not there at the time, aiding, abetting and encouraging her husband to commit the act; and in the absence of any proof from her or others testifying in her behalf that she endeavored to dissuade her husband from going to the home of the Goldsmiths or to prevent this shooting by word or act, leads us conclusively to the belief that she was not only a co-conspirator but that the court very properly refused to give peremptory instructions for her acquittal.  As said in Anderson v. Commonwealth, 196 Ky. 30:

"We are aware of the rule that a conspiracy may be proved by circumstantial evidence alone and that, necessarily, the testimony in the trial of a conspiracy charge must take a wide range, since, as said in the case of Gambrell v. Commonwealth, 130 Ky. 519, 'A conspiracy is almost necessarily established by the welding into one chain of a number of links, each in itself inconclusive and

insufficient to prove the conspiracy, but, when connected and examined as a whole, sufficient to show it.''

That statement of the rule of practice was referred to with approval in the case of Welch v. Commonwealth, 189 Ky. 579, and it but expresses the universal rule upon the subject and as a result of the latitudinous application of the rule, it frequently occurs that acts, statements and conduct of an alleged co-conspirator are permitted to be proven before there is any established connection between him and the defendant on trial, which testimony, however, should always be excluded if the Commonwealth fails to connect the defendant therewith; but in the case at bar it is, we think, amply demonstrated by the testimony that appellant entered fully into a conspiracy with Jim Marcum and Dennison to kill Tom Goldsmith.

In the fourth ground attorneys for appellant complain that the trial court erred in limiting the argument to one hour for each side, but the record discloses that they suggested that the case be submitted to the jury without argument and that counsel for the Commonwealth objected, whereupon the court limited the argument to one hour, to which counsel for appellant objected. (See transcript of evidence, page 184.)

This court would not feel inclined to reverse a judgment for an alleged error of this character unless it was affirmatively shown from the record that the substantial rights of the defendant were prejudiced; and it would appear that counsel could have easily presented to the jury within the space of time given an argument that they at first did not deem of sufficient importance to present at all. In behalf of their contention they refer to the case of Williams v. Commonwealth, 82 Ky. 640, wherein at the trial of a defendant charged with a felony his counsel, desiring to argue the case, was limited to five minutes; and in an opinion by the court it is held that the allowance of time for argument was within the sound discretion of the court, and unless complaint was made and longer time asked for, the court would not interfere; but it further says: "To confine his counsel to five minutes amounts to giving him no time whatever;" and "in a criminal case greater latitude should be given." The court also said: "However well satisfied the trial judge may be of the guilt of the accused, and however hopeless the task of argument by counsel may seem to him, yet he has no power to deprive the defendant of this right, either by

entirely denying it or so limiting it as to make it a mockery.''

In Lynch v. The State, 9 Ind. 541, it is said:

''The court has a right to regulate by reasonable rules and limitations the argument of causes. This is a necessary discretion to be possessed by a court to prevent abuse.''

It is true that every right of a defendant should be zealously guarded, and that proper latitude should be afforded counsel to present argument in his behalf; but at the same time it is equally imperative that useless and needless consumption of time in presenting a case be prevented; and we feel that it is entirely within the province of the trial court to limit argument to such a length as he may deem wise and proper, though at all times exhibiting a due regard for the rights of the defendant and the Commonwealth; and we further feel that attorneys for appellant in this case have no just ground upon which to base their contention that the court erred.

The judgment is affirmed.