## Burns v. Commonwealth.

(Decided April 24, 1931.)

ROY W. HOUSE for appellant.

J. W. CAMMACK, Attorney General, HOWARD SMITH GENTRY for appellee.

OPINION OF THE COURT BY JUDGE BRATCHER—Reversing.

The grand jury of the Clay circuit court at its September term, 1930, indicted McKinley Burns and Tolie Riley jointly, charging them with the willful murder of Albert Bishop Roberts. The body of Roberts was found dead on the 9th day of August, 1930, on Bull Skin Mountain in Clay county. A separate trial was asked and granted; the commonwealth elected to try McKinley Burns. The trial was set for the 9th day of the September term, resulting in a mistrial. The jury was dismissed from consideration of this case on the eleventh day of the term, and on the fifteenth day of the term an order was entered setting this case down for trial for the twentieth day of the same term of court. The order setting this trial further directed that I. J. Howard, deputy sheriff of Clay county, summon from the county of Jackson fifty veniremen for jury service in this case. A second trial was had, resulting in a judgment of conviction for manslaughter and a sentence of ten years in the penitentiary.

The defendant filed motion and ground for a new trial, which was overruled, from which order he has appealed to this court, complaining: (1) That the verdict is not sustained by the evidence; (2) that the court erred in selecting a jury from a county other than Clay to try this case; (3) the court did not properly instruct the jury; (4) in overruling his motion to continue; (5) in overruling his motion to have the body of Roberts exhumed and examined; (6) in the admission of incompetent evidence over his objection and the failure to admit competent evidence offered by the defendant. The motion and ground for a new trial sets out several other grounds that are subdivisions of the above named and numbered grounds and are considered in the above division.

In disposing of the first ground, it becomes necessary to give a statement of the facts and circumstances as proven by the witnesses for the commonwealth. The discovery of the body was made by Tolie Riley on Bull Skin Mountain in what is called Twin Hollow of Meadow Branch about 350 yards from the mouth of Twin Hollow. It was found lying on a level spot on the mountainside where a large tree in time had been uprooted, creating a mound against which dirt had filled, leaving a slight

depression. When found, he had been dead for several hours. There was some dead timber which had broken off and had fallen across his legs and feet. Several rocks of various sizes were near his body. Upon finding the body, Tolie Riley notified Squire Robert Bowling, a magistrate of the county, who held an inquest. An examination of it disclosed that the left side of the head had been crushed in. Some of the witnesses testified that the neck was broken. The body had been moved about 400 yards from the place where it was found. Squire Bowling testified that it was not stiff at the time he examined it between 8 and 9 o'clock Saturday night. After examining the body, the magistrate and part, if not all, of the jury made an examination of the surrounding mountain side. Upon the hill about 100 yards from the place where the body was found a still site was located. The furnace was still warm, the ashes were hot, some still slop was present; the aspect of the surroundings indicated that liquor had been manufactured there within the last twelve or fifteen hours. One of the members of the coroner's jury, in searching around the still site, found a gun barrel concealed in the weeds. A path led directly from the still to the place where the body was found. The tracks of two men were plainly discernible from the still site down to or near the place where the body was found. These tracks were parallel to each other, or, as the witnesses say, side by side.'' There were several other paths, one of which led in the direction of appellant's home. The commonwealth introduced two witnesses that detail conversation had with the appellant on the day the body of Bishop Roberts was found. These witnesses testify that appellant told them that on Friday Roberts visited the still where they were making liquor, and, to put it as the witness stated it from the stand, ''He was the drunkest man I ever seed.'' This conversation was had in the presence of Tolie Riley, who is jointly indicted with this appellant, and his brother Elmer Riley. The appellant stated to these witnesses that, when Roberts left the still, he went straight down the hill. These two witnesses, Tolie and Elmer Riley, state that the appellant told them that he, the appellant, Arthur, Leonard, Harve, and Charlie Burns were at the still. The appellant made inquiries of the Rileys as to the whereabouts or knowledge of Bishop Roberts, expressing his uneasiness about him. The evidence further discloses that during this conversation they agreed

to go and hunt for him, and, pursuant to that agreement, they did start upon a search for the dead man. They went by the home of his father and inquired of the father if he had come in, and that Uncle John E. Roberts told them that he had not, and said that he was uneasy about him. It appears that near about the barn of John E. Roberts the appellant abandoned the search, saying, "I don't believe I will go with you, I'm going to Buffalo," and that Tolie Riley went on up Twin Hollow where he met up with Lloyd Roberts and Steve Burns. Tolie Riley told these men when he met them that he was going to Newfound. Somebody in the crowd suggested that he wait and they would go with him. Then he abandoned the trip, saying, "I think I will go back, it looks like rain and it is so hot." He there turned back went on up the hill, he says, expecting to find Bishop drunk, and "happened to find him dead." The other evidence relied upon by the commonwealth connecting this appellant with the commission of the crime is some circumstances which, if bearing upon this crime or its commission, are remote. One of the commonwealth's witnesses testified that on Saturday about 8 o'clock in the morning he met McKinley Burns in a cornfield on Graham branch; that they walked through the cornfield and took a drink of whisky; that the witness asked the appellant if he knew where Bishop Roberts was, and that he said, "Out in the country somewhere." The father of the dead man said that his son had on him about 25 or 40 dollars. It is not certain from this record just what money was found on the dead body. One commonwealth's witness testifies to finding a piece torn from a purse. This piece of purse was identified by the father of the dead man as being a part of that carried by his son. This piece of purse was found among the leaves at the place where the body was found.

This is about all the facts and circumstances of the evidence introduced by the commonwealth in its attempt to fasten the charge of murder upon this appellant. The defendant took the stand in his own defense. His evidence sheds but little light upon the vital question before us for determination. He denies killing Bishop Roberts or striking him or of having any knowledge of who did strike him or kill him. He likewise denied in detail each and every statement made by Tolie and Elmer Riley concerning the conversation. He denied having any interest in, or any knowledge of, the still. He stated that

he was 28 years old and that the decedent was about 50 years old; that they were first cousins, brother's and sister's children; that they were the best of friends; and that they had never had any trouble. The only weakness in the evidence, if it may be called a weakness, of the appellant, is on cross-examination. He stated that he stayed at home all day Friday, the day before the body was found, and attempted to account for his whereabouts until Sunday evening, the time at which he said he first learned of the death of Roberts. The commonwealth introduced in rebuttal several witnesses who were at the house of Sam Burns, which is the home of the appellant, none of whom saw appellant. Some of the witnesses were there while the family was partaking of the noon-day meal who testified that he did not eat at the table with the rest of the family. Other witnesses were there at other periods of the day. In the whole, they cover practically all day.

As will be observed, all the evidence introduced by the commonwealth is circumstantial. It was the theory of the commonwealth that Bishop Roberts was murdered at the still and the body carried from that place to the place where it was found. At no time or place did the commonwealth attempt, directly or by inference, to show any motive other than the feeble attempt of showing robbery as the motive. The commonwealth's evidence must of a necessity in this character of cases cover a vast field of circumstances, actions, and conduct of the various actors. There is but little conflict in the statement of facts and circumstances. There is some difference; and the evidence conflicts in the description of the ground and the objects found around the body. The one undisputed fact is that Roberts was found dead on the side of Bull Skin Mountain; that his head was crushed and neck perhaps broken.

The appellant's theory being that the deceased met his death by a self-inflicted or accidental injury, that in his intoxicated condition he fell, striking his head against some of the many objects at the place, and that the injury so inflicted resulted in his death. As we said, the evidence is purely circumstantial, and we cannot say that the circumstances are strong or convincing. Possibly Roberts was the victim of foul play at the hands of some one during Friday, August 8th, or the early part of Saturday, the 9th. There are some questions the circumstances do not answer; neither shall we attempt

to do so. The knowledge of things which transpire at and around a moonshine still are locked in the profound iniquity of wicked hearts. It is earnestly insisted that the verdict is not sustained by the evidence and is palpably against the weight of the proof that the court therefore erred in overruling appellant's motion for peremptory instructions. It is said in appellant's brief that the evidence more clearly shows that Roberts came to his death by accident than otherwise. We fail to find any evidence of a substantial character showing how, or at whose hands, or by what means, he came to his death. There is no evidence that the appellant killed Roberts or that he was present when he was killed or that he was killed by any one. Believing the evidence of the commonwealth implicitly and every character of circumstance connected and proven, it does not more than faintly point a finger of suspicion at the appellant, and is as consistent with his innocence as with his guilt.

We are thoroughly aware of the rule thoroughly established and long followed that, if there is any evidence of a substantial nature to submit the guilt or innocence of the accused to a jury, the rule goes no further. This court, in the case of Anderson v. Commonwealth, 196 Ky. 30, 244 S. W. 315, 317, in discussing the sufficiency of evidence in the substantiation of a verdict of conviction, said:

"Where there is any substantial probative evidence in the trial of a criminal case, the guilt or innocence of the defendant should be submitted to the jury by appropriate instructions although a conviction based thereon would be regarded as flagrantly against the evidence; but that rule goes no further, and it does not interfere with the right and authority of the court to direct an acquittal when there is no substantial probative evidence to establish the guilt of the defendant on trial. Indeed, the latitudinous rule referred to recognizes that the sum total of the proof necessary to establish a conspiracy consists of a chain of evidence composed of more than one link, each of which singly and alone might be 'inconclusive and insufficient to prove the conspiracy,' but as a whole, 'sufficient to show it.' The law against crime should be enforced, and it is the duty of the courts and others connected therewith to do so, but it is as important that the innocent go free as

that the guilty be punished. So jealous is the law of the rights of the citizen that it is everywhere recognized that no one shall be punished unless his guilt is proven beyond a reasonable doubt. Hence, it is the duty of courts, when called upon to review the proceedings wherein the defendant was convicted, to satisfy themselves that the testimony as a whole was reasonably calculated to produce more than a mere suspicion, and to possess at least some convincing weight.''

The above case was cited in the case of Partin v. Commonwealth, 197 Ky. 840, 248 S. W. 489, 491, in which case the court said:

"This court has jurisdiction to reverse a judgment of conviction in a criminal case on the ground that it is flagrantly against the evidence, but which authority we have continually held should be sparingly exercised, and not done unless from the entire record it is made patent to a reasonable and impartial mind that the verdict was the result of passion and prejudice on the party of the jury to such an extent as to shock the conscience of the court whose primary duty it is to administer justice in all cases.''

See Day v. Commonwealth, 197 Ky. 730, 247 S. W. 951; Allen v. Commonwealth, 176 Ky. 475, 196 S. W. 160; Polley v. Commonwealth, 171 Ky. 307, 188 S. W. 409; Day v. Commonwealth, 173 Ky. 269, 191 S. W. 105; Crews v. Commonwealth, 155 Ky. 122, 159 S. W. 638; Hall v. Commonwealth, 149 Ky. 42, 147 S. W. 764; Edmonds v. Commonwealth, 149 Ky. 242, 147 S. W. 881; Lucas v. Commonwealth, 147 Ky. 744, 145 S. W. 751; Davis & Long v. Commonwealth, 211 Ky. 771, 278 S. W. 104; Fowler v. Commonwealth, 204 Ky. 426, 264 S. W. 1065; Slone v. Commonwealth, 236 Ky. 299, 33 S. W. (2d) 8; Combs v. Commonwealth, 224 Ky. 653, 6 S. W. (2d) 1082.

In view of this evidence and a long unbroken line of decisions, only a few of which are above cited, the commonwealth failed to make out such a case as would justify the submission of the charge to the jury, and appellant's motion for a directed verdict should have been sustained.

The defendant's second ground of contention is wholly without merit. He complains of the court's action in summoning a jury from Jackson county. The

court abused no sound discretion in view of section 194 of Criminal Code of Practice; but, under the provision of section 281 of same Code, the action of the court is not subject to review by this court. Marcum v. Commonwealth, 201 Ky. 527, 257 S. W. 714; Stamp v. Commonwealth, 200 Ky. 133, 253 S. W. 242; Winstead v. Commonwealth, 195 Ky. 484, 243 S. W. 40.

Inasmuch as this case must be reversed for the reasons above set out, we refrain from discussing other grounds relied upon in appellant's motion and ground for new trial, and they are expressly reserved.

We therefore conclude that the court erred in overruling the appellant's motion for a peremptory instruction, and direct that, upon a retrial of this case, if the evidence is substantially the same, the court will sustain a motion for peremptory instructions. Wherefore the judgment is reversed and the cause remanded for a new trial not inconsistent with this opinion.