### Combs v. Commonwealth
(Decided Feb. 1, 1938.)

SCOTT E. DUFF for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KEL-LER, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

Dolph Combs was tried and convicted in the Perry circuit court on the charge of grand larceny on the 28th day of June, 1937. His punishment was fixed by the judgment of the court at two years' confinement in the penitentiary. He appeals. He was jointly indicted with Orville Church, Buford Combs, and John Sturgill. His grounds for reversal, as set out in his motion for a new trial, contained several alleged errors. However, his counsel waives all of them, and bases the right of reversal upon one ground alone. That ground is, that certain incompetent evidence was heard by the jury over appellant's objection, in violation of section 10 of the Constitution of Kentucky, as well as article 4 of the Amendments to the Constitution of the United States.

It is declared by these sections that:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

A correct and proper solution of the question requires a brief summary of the salient facts. The Marlowe Coal Company owned mines in Perry county, from which large quantities of copper trolley wire had been stolen some time before the arrest of appellant. This copper trolley wire was used in constituting hangers on which its motorcars ran. The amount of wire stolen

amounted to 900 pounds or more, worth far in excess of $20. Information had been obtained that on a certain night in the month of June, 1937, parties would enter upon the premises of the coal company and remove the wire from a place near the mouth of Acup creek where it had been left after it was stolen. Tolbert Holliday, a deputy sheriff of Perry county, received information of the loss of the copper wire and that it had been stolen from the coal company. He was informed that if he would go to the mouth of Acup creek at night, he would, no doubt, catch the men who had stolen the wire; so he, with Marion Banks and Casey Reeves, deputy sheriffs of the county, and Arlie Igo, whom he appointed to assist him, on the 16th day of June, 1937, at night, between 11 and 12 o'clock, proceeded to go to this point on Acup creek, and on their way met a man who turned out to be Orville Church, one of the parties jointly indicted, coming down the road with a flashlight in his hand, in front of an automobile. When they met Orville Church with the flashlight at that late time of night, they had not up to that time seen Dolph Combs. They arrested Orville Church and had him go around behind a coal house, where he could not be seen by the operator of the automobile. After doing that, immediately the automobile came on toward them in the road. They found it to be operated by Dolph Combs, accompanied by John Sturgill, who was also jointly indicted with Combs. They then arrested each of them. After making the arrest, they found on searching the automobile, on the back seat, 600 or 800 pounds of this copper wire and a pair of clippers or wire cutters. It is in evidence that they had received information that parties who had stolen the wire would go after it; also, that one of their number would be watching, while others went after the wire. They found Buford Combs, one of the men jointly indicted, down at the highway. They also had information that one of them would be placed further up the branch for the purpose of giving a signal. In answer to that information, they found Orville Church, one of the number, with the flashlight. The evidence was to the effect that the flashlight was the property of Dolph Combs. In fact, he claimed the flashlight to be his own. The evidence is that he not only put the man who carried the flashlight under arrest, but turned him over to

Arlie Igo, one of the men whom he had summoned to assist him in making the arrest. He had him put the flashlight out. It is further in evidence that the clippers or wire cutters, which were used in cutting the wire, were in the automobile. The evidence of all of the officers, in substance, was that the arrest of the defendant was made, based upon the information they had received that a felony had been committed, and that the search of the automobile, where the copper wire and wire cutters were found, was not made until after the arrest.

Appellant objected to this testimony, claiming that it was incompetent because the officers who arrested him had no search warrant, and violated section 10 of the Constitution, when they opened the automobile and found the wire and wire cutters without a search warrant. Counsel relies upon the cases of Youman v. Commonwealth, 189 Ky. 152, 224 S. W. 860, 864, 13 A. L. R. 1303; Young v. Commonwealth, 230 Ky. 767, 20 S. W. (2d) 730; Reed v. Commonwealth, 233 Ky. 184, 25 S. W. (2d) 77; Witt v. Commonwealth, 219 Ky. 519, 293 S. W. 1072, where the court said, in substance, under the facts of those cases, that it was a flagrant violation of section 10 of the Constitution for public officers to search the premises or possessions of an alleged offender for the purpose of discovering evidence against him or take possession of any species of property discovered in any unlawful purpose, or to search his person until after he has been lawfully arrested. We still adhere to that doctrine.

The facts here are altogether different from the facts and circumstances in the Youman Case, and the other cases cited, supra, as we will show. In the instant case, the deputy sheriff, Tolbert Holliday, had been given information that at a certain time and at a certain place persons would be found in possession of the wire, which had been stolen, and would be transporting it from where it had been deposited after it had been stolen from the coal company. Based upon this information, the sheriff went to the point where he was told and advised these parties would appear, and when appellant and his comrades were met at this point by the sheriff, he immediately arrested them, and after the arrest

searched the automobile and found the stolen wire and wire cutters in the automobile.

It is provided by subsection 2, section 36, Criminal Code of Practice, that "a peace officer may make an arrest * * * when he has reasonable grounds for believing that the person arrested has committed a felony." The information received by the officer, as shown by the evidence, was received from creditable men. The sheriff believed what they said. The information was reasonable and sufficient to base an arrest by the sheriff. In the Youman Case, and other cases cited, the charge was a misdemeanor. When the search was made in that case, Youman was not under arrest. Of course, the officer in that case had no right to search the premises or automobile of Youman without a search warrant. In the Youman Case, we said that, "in felony cases, when the officer has reasonable grounds for believing that the person arrested has committed a felony, he may, without a warrant of arrest, place the person so offending in custody * * * and in such * * * case he may take possession of the unlawful things found on or in [his] possession"; so that case approves fully that the officers in the present case, having made the arrest before making the search and the arrest being founded upon reasonable and creditable information they had before received, had a perfect right to search the automobile, and, in so doing, did not violate section 10 of the Constitution.

In the case of Turner v. Commonwealth, 191 Ky. 825, 231 S. W. 519, 521, the court, in referring to the Youman Case, in the course of the opinion said:

"An examination of that case will show that it distinctly recognizes, as a long-established exception to the rule against search and seizure, that an arresting officer has the right without a warrant to search the person of a prisoner lawfully arrested, and take from his person and hold for the disposition of the court any property connected with the offense for which he is arrested and which may be used as evidence against him. 2 R. C. L., sec. 25, page 467."

In the same opinion, this rule was announced:

"Our Code authorizes an arrest without a warrant

where the officer has reasonable grounds to believe that the person arrested has committed a felony. Section 36, Criminal Code; Wright v. Com., 85 Ky. 123, 2 S. W. 904, 8 Ky. Law Rep. 718; Morton v. Sanders, 178 Ky. 836, 200 S. W. 24.''

The rule in the Turner Case, supra, has been followed by this court up to this time. The only question here is, Did the officers who arrested appellant have reasonable grounds for believing a felony had been committed before making the arrest?

In Commonwealth v. Riley, 192 Ky. 153, 232 S. W. 630, 632, we said, in discussing the question of what constituted reasonable grounds:

"The necessary elements of the grounds of suspicion are that the officer acts upon a belief in the person's guilt, based either upon facts or circumstances within the officer's own knowledge, or upon information imparted to him by reliable and credible third persons, provided there are no circumstances known to the officer sufficient to materially impeach the information received.''

All of the authorities, including the Youman Case, agree that any evidence that may be found by searching the defendant, after he has been lawfully arrested, if the arrest is made, based upon reasonable grounds that a felony has been committed, does not come within the constitutional inhibitions against unlawful search and seizure either of one's premises or his person. Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Armstrong v. Commonwealth, 190 Ky. 217, 227 S. W. 162; Wallace v. Commonwealth, 187 Ky. 775, 220 S. W. 1051; 5 C. J. 434; 11 R. C. L. 801. Many other authorities of similar import might be cited.

We cannot escape the conclusion that such testimony was competent. However, if not competent, there is sufficient evidence in the record, other than that on which the verdict of the jury may be grounded.

It is in evidence that when the deputy sheriff stopped the automobile, appellant said to him: "You've got me this time"; and then the sheriff said in answer: "We finally caught you this time." His answer was:

"Yes, you have." Mandy Church, a witness for the Commonwealth, stated that before the wire was taken from the coal company, appellant showed her the wire clippers; that he had them up under his coat; that she was the wife of a brother of Orville Church; that she knew of the Marlowe Coal Company losing the copper wire; that she heard appellant talking about it, together with Orville Church and John Sturgill, two of the men indicted with him. The conversation occurred in front of the store of Dolph Combs; that the three together wanted to get her husband to go with them and get the copper wire. He refused to do so. That was before the wire was taken. She heard appellant on another occasion say that they were going to No. 7 mine at the Marlowe Coal Company and get the copper wire; that John Sturgill and Orville Church were present at the time. This conversation occurred before the wire was found. Considering the time of night, in connection with the testimony that Dolph Combs and those jointly indicted with him were found on the road that led to the mouth of Acup creek, and what appellant said when arrested, even if the testimony concerning the search made of the automobile and wire and clippers or cutters being found therein be excluded, there was sufficient testimony left on which the jury might have based a verdict. The substantial rights of appellant, if the testimony be considered incompetent, were not affected by that evidence. It is our opinion that the evidence was competent, and that no error has been pointed out justifying a reversal of the case.

Wherefore, the judgment is affirmed.

Whole court sitting.