# Clark v. Commonwealth.

Oct. 10, 1941.

B. S. Grannis and Russell Porter for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appellant convicted on a charge of breaking into a storehouse with felonious intent, etc., Kentucky Statutes, section 1164, and sentenced to confinement for two years, prosecutes this appeal. While several grounds for a new trial were advanced in the lower court, as the case comes before us the debated questions are considerably narrowed. The all-covering ground is that the verdict is flagrantly against the evidence. Second, that evidence obtained by witnesses by entry of Clark's barn without a search warrant was incompetent, and should have been excluded from consideration of the jury upon appellant's objection.

John Breslin, chief prosecuting witness, operated a

farm in Fleming County. He had stored in the barn some rolls of woven wire fencing. In the latter part of May 1940, he discovered the loss of two rolls of his wire valued at $18. Investigation showed that there had been a breaking by the removal of a chain which lapped around a plank or post, holding the two barn doors together. The wire had been taken from the top tier in the barn and rolled out to the roadway. There was evidence that a truck had been stopped near the doors, and marks made by the tires, which were noted by Breslin, led him to the belief that if he could locate the tires he would have a starting clue.

He afterwards located a truck in front of appellant's barn, which he said carried tires he believed had left the marks near his barn. There seems to have been no further investigation for a time, but later, after there had been a beef stolen in the neighborhood, Clark appeared at Breslin's office in Maysville and was deploring the fact that the theft had been committed in their neighborhood. In this conversation Clark told Breslin that he would give him some information as to where he could locate his wire fencing, provided he would not "give him away." Breslin said he would protect him unless it became necessary to use him as a witness. Clark then told Breslin that the wire was in "little George Turner's barn," and that Turner had tried to sell it to him. The day following the conversation Breslin consulted with Coryell, a deputy sheriff, who made an examination of Turner's barn and reported to Breslin that he found no wire.

Later on Breslin says that he "got a clue" that the wire was in Clark's barn; this information was given Coryell, who in a few days reported to Breslin that his wire was there. At this point it may be noted that one of the rolls of wire had such marks upon it as to allow Breslin to identify it. Breslin and Coryell then went to the barn and saw the wire. After making sure that he was not mistaken as to ownership Breslin had a search warrant and warrant of arrest issued. He and the sheriff and deputy went to Clark's place where Clark was put under arrest; they then went to the barn, got the wire and took it to the county seat. Clark seems to have made no protest, but claimed that it was his wire and he had bought it from a merchant in Flemingsburg.

At the time of the arrest Clark said, "Hold on boys,

I'll tell you the truth about this wire. * * * I've defended those boys long enough. I bought this wire from Everett Berry and Alvin Strode. They brought it there at night and I gave them $5.00 per roll for it.'' Breslin also said that after examining trial Clark met him on the street and wanted to know if there was not some way the matter might be adjusted; Breslin told him he would let the court settle it. The deputy sheriff corroborates the testimony of Breslin as to what occurred after he was called into the case, as does the sheriff as to what occurred at the time of arrest and the securing of the rolls of wire. Another witness testified as to what he called the ''peculiar'' marks made by the truck tires. As to whether or not it was Clark's truck was a subject which brought out strong contradictory evidence.

Appellant testified that he had bought three rolls of wire from Berry, as he claimed at different times and all during the ''last days of May.'' The wire was brought to his place apparently after dark; Berry came to the house after the Clark family had eaten supper and asked payment. Clark wanted Berry to accept a check, but he declined and Clark obtained two $5 bills from Mrs. Clark and paid him. Mrs. Clark, and other witnesses who were at the Clark home, corroborate the testimony as to the presence of Berry and the payment of the $10. Clark testified that the tires on his truck did not make marks as described by Breslin and his tenant.

Strode and Berry were positive that they had never sold or delivered any wire to Clark at any time, or that they had taken the wire from Breslin's barn. Clark admits payment to Berry for some work, perhaps to the amount of $2 or $2.50, but says Berry performed no work for the $10. Whether Berry worked sufficient time to earn as much as ten or twelve dollars, as he claimed, is the subject of conflicting testimony. There is testimony to the effect that Clark had made approaches to George Turner to get him to testify that Strode and Berry stole the wire. This was denied by Clark. He does admit that when the wire was located in his barn he told Breslin and the officers that he bought the wire from Berry, who said he had bought it in Ohio, and that he was tired of protecting them, explaining that ''protection'' meant dread or fear that he might be burned out. He admits that he told Breslin that he ''thought'' he would or could find the wire in little George Turner's

barn, because Turner had told him there had been two rolls of wire left in his barn. Turner denies such conversation.

The grounds upon which appellant seeks a reversal may be thus stated: First it is urged that the evidence in respect of the marks made by the tires of the truck, which apparently moved the wire from Breslin's barn, "is too slight to uphold a conviction, and is wholly contradicted by previous statements of Breslin and his tenant." For the sake of discussion only, this pronouncement in part may be admitted, and if it were the only evidence tending to manifest guilt, there would be little necessity for further comment. However, since the argument is advanced, that eliminating what is conceived to be the incompetent and damaging testimony, the case must stand on the tire proof, we pass to a consideration of that discussion.

It is contended that the discovery of the wire in Clark's barn by Coryell, later observed by him and Breslin, was illegal, and that the later search under warrant after Clark had been arrested was illegal because the search warrant was "based upon a previous illegal search," which fact, if such, is not manifested in the record. The question arose upon defendant's motion at the close of commonwealth's proof, to set aside the swearing of the jury and declare mistrial because of the admission over objection of testimony, in respect of the discovery of the wire in the barn by Breslin and Coryell.

Appellant relies on the case of White v. Com., 221 Ky. 535, 299 S. W. 168, wherein the proof showed that an officer went to White's store to borrow a hatchet. Instead of leaving the store he opened a door into a rear room and discovered "home brew." Later he got a search warrant, basing the *affidavit* upon the information he had, as the court said, "illegally gained." On appeal we held that the information gained as stated could not be used as the basis for a search warrant, and on this ground we reversed, overruling Reitzel v. Com., 203 Ky. 186, 261 S. W. 1106. Neither the search warrant nor supporting affidavit was called for in this case.

For the commonwealth there are briefs on the part of the commonwealth's attorney and the attorney general. In the first-named brief it is argued that the Clark barn, not being used in connection with the dwelling, is

not protected by the federal constitutional amendment from search, citing Earl v. United States, 9 Cir., 4 F. (2d) 532. Appellant apparently answers this by reference to Morse v. Com., 204 Ky. 672, 265 S. W. 37, and Stafford v. Com., 212 Ky. 229, 278 S. W. 574. It is also correctly argued that evidence found by search after the arrest is made may be introduced without violation of the search and seizure amendment, as we held in Combs v. Com., 271 Ky. 794, 113 S. W. (2d) 438, and Minx v. Com., 283 Ky. 14, 140 S. W. (2d) 658. But the complaint is here that the final search was based on evidence obtained without search. However, both briefs are agreed on one rule of procedure, to the effect that even if the court erred in allowing the evidence of the initial search to go to the jury, and the defendant moved for a peremptory or a discharge of the jury on this ground, he lost the effect of his motion and basic objections by going on the stand and establishing facts which were persuasive, if not essential in making a case justifying submission.

It is evident from Clark's testimony that assuming that he bought the wire from Berry, Clark knew he had no good title. Stolen property found in one's possession is a circumstance sufficient to authorize the submission of guilt on the question of breaking. Slone v. Com., 234 Ky. 129, 27 S. W. (2d) 672; McFarland et al. v. Com., 227 Ky. 411, 13 S. W. (2d) 277; Gilliam v. Com., 263 Ky. 342, 92 S. W. (2d) 346.

The fact that Clark admitted that the wire had been in his barn from about the time Breslin lost his wire; that his rightful possession of it was in his mind questionable, coupled with the fact that he apparently agreed to the final search, and made no objection to the seizure, would manifest at least to us that the jury was not motivated by any feeling of bias or prejudice.

In the case of Minniard et al. v. Com., 214 Ky. 641, 283 S. W. 1001, 1002, where practically the same situation existed and similar question was raised, we deemed it unnecessary to decide the disputed question "because neither appellant rested on his objection to the testimony of these officers or on his motion for a peremptory instruction." We said:

"On the contrary, after their objections and motions had been overruled, they went upon the witness

stand and each testified on his direct examination that they had the liquor in their possession on the occasion in question. Conceding, without deciding, that the testimony of the commonwealth was incompetent, yet the appellants, by taking the stand and testifying to the condemning facts, supplied the testimony necessary for their conviction, which the commonwealth had failed to establish by competent proof. It is well settled that, after a defendant has moved for a peremptory instruction at the conclusion of the commonwealth's evidence, and his motion is overruled, if he then introduces testimony which establishes the facts necessary to his conviction and thus makes out the case, he cannot complain that his motion for a peremptory was overruled or that the commonwealth had failed to make out its case by competent testimony produced by it. Brittian v. Com., 200 Ky. 461, 255 S. W. 59; Marcum v. Com., 201 Ky. 527, 257 S. W. 714.'' See also Eaves v. Com., 241 Ky. 140, 43 S. W. (2d) 528; Minniard v. Com., 214 Ky. 641, 283 S. W. 1001.

Section 271 of the Criminal Code of Practice provides that a new trial may be granted if the verdict be against the law and the evidence, if substantial rights have been prejudiced, and section 340 provides that this court shall reverse for error appearing in the record, if upon consideration of the whole case the court be satisfied that the substantial rights of the accused have been prejudiced thereby.

Upon consideration of the record we find nothing which would justify us in concluding that the substantial rights of appellant have been prejudiced. While the evidence is conflicting, the jury was the sole judge of weight and balance.

Judgment affirmed.